**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

LENORE L. DUWAR,                    )
                                    )
Plaintiff,                          )
                                    )
vs.                                 )     NO. 2:06-cv-101
                                    )
GEORGE PABEY, *et al.*,             )
                                    )
Defendants.                         )

**<u>OPINION AND ORDER</u>**

This matter is before the Court on: (1) Defendants' Motion for Summary Judgment, filed by Defendants, George Pabey, in his individual and official capacity as Mayor of East Chicago, L. Monsie Corsbie, in her individual and official capacity as Director of the Solid Waste Division of the East Chicago Sanitary District, the East Chicago Sanitary District, and the City of East Chicago, Indiana, on February 5, 2007; and (2) Defendants' Motion to Strike Certain Matter Asserted as Fact by Plaintiff in Opposition to Defendants' Motion for Summary Judgment, filed by Defendants, George Pabey, in his individual and official capacity as Mayor of East Chicago, L. Monsie Corsbie, in her individual and official capacity as Director of the Solid Waste Division of the East Chicago Sanitary District, the East Chicago Sanitary District, and the City of East Chicago, Indiana, on April 10, 2007.  For the

reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED** and the Motion to Strike is **DENIED AS MOOT**.  The Clerk is **ORDERED to DISMISS WITH PREJUDICE** Plaintiff's complaint and to **CLOSE** this case.


BACKGROUND

This case is one of many before this Court involving the issue of patronage dismissals when the Pabey administration replaced the Pastrick administration.  Plaintiff, Lenore Duwar, claims she was fired from her job with the City of East Chicago, Indiana, because of her political support for former Mayor Robert Pastrick in the 2003 and 2004 elections.  Additionally, Duwar claims she was fired because of her race, Caucasian.

Defendants, George Pabey, in his individual and official capacity as Mayor of East Chicago, L. Monsie Corsbie, in her individual and official capacity as Director of the Solid Waste Division of the East Chicago Sanitary District, the East Chicago Sanitary District, and the City of East Chicago, Indiana (collectively "Defendants"), filed the instant motion for summary judgment on February 5, 2007.  Defendants contend that summary judgment is warranted on Duwar's section 1983 claim because Duwar has failed to come forth with evidence that her politics played any role in the City's decision to lay her off.  Additionally, they argue the City had a legitimate, non-political reason for

terminating Duwar as part of a general workforce reduction instituted to cut payroll expenses as part of a $2 million reduction in the City's 2005 budget.  Finally, Defendants claim that Duwar's section 1981 claims must fail because there is no evidence that Duwar's layoff was due to her race.  Plaintiff contests each of these arguments, claiming she has satisfied both prima facie burdens.

In addition to the summary judgment motion before the Court, Defendants filed a motion to strike certain matter asserted as fact by Plaintiff in opposition to Defendants' motion for summary judgment.  Defendants request that a number of the averments made by Dr. Timothy Raykovich, M.D., former Mayor Pastrick's assistant, be stricken from his declaration because certain paragraphs (paragraphs 9-10, 12-15, 18, 23-26, 28, 30) contain statements of purported facts about which Raykovich lacks personal knowledge, or contain legal argument, or are mere speculation.  Defendants also request that a number of other paragraphs be stricken from Duwar's appendix as inadmissible (paragraphs 13, 88, 40, 89, 91, 93, 12, 14, 21, 24, 25, 26, 27, 28, 29, 31, 32, 33, 36, 37, 38, 41, 43, 87) because they contain legal conclusions, legal argument, and are not supported by facts.  Having been fully briefed, both motions are now ripe for adjudication.

Facts

3

Duwar was hired by the City of East Chicago as a part-time non-union employee in 1989 in the Clerk's Office, and was made a full-time employee about one year later. (Duwar Dep. at 8-9.) From the Clerk's Office, she moved into the Sanitary District in 1990. (Duwar Dep. at 9-10.) She was promoted from a receptionist to secretary first in the Wastewater Division, and then in the Solid Waste Division. (Duwar Dep. at 10-12.) The last position she had in the Solid Waste Division was Administrative Assistant to Corsbie, who is Director of the Solid Waste Division of the East Chicago Sanitary District. (Duwar Dep. at 11-12; Corsbie Dep. at 11-12.) Corsbie had two administrative assistants, Duwar and Constance Dedelow, two secretaries (Melissa Martinez and Traceen Warner), and a receptionist (Cristina Guillen). (Corsbie Dep. at 39-41.) Duwar and Dedelow, the two administrative assistants, both earned $44,715, and Martinez (secretary) earned $28,966, Warner (secretary) $27,129, and Guillen (receptionist, but listed on payroll as a secretary) $25,329. (Pacurar Dec. ¶ 32.) Duwar's duties included taking Corsbie's calls, handling routine problems in the office, payroll, attendance, accounts payable, expenditures, and purchase orders. (Corsbie Dep. at 36.)

Taking a step back, when Mayor Pastrick ran for re-election in 2003, he was opposed by George Pabey, a former Police Chief and member of the City Council, who is Hispanic. Although Pastrick won the election in 2003, the Indiana Supreme Court ordered a new

special election based on ballot irregularities.  Pabey defeated
Pastrick in the Special Democratic primary election held on October
26, 2004, and won the Special General Election on December 28,
2004, assuming office the next day.

After winning the special Democratic primary election, Mayor
Pabey assembled a "transition team" and prepared for taking office.
Charles Pacurar served on Mayor Pabey's transition team, and was
appointed by Mayor Pabey as the City Controller for East Chicago on
December 29, 2004.  As City Controller, Pacurar's duties included
managing and directing the finances and accounts of the City,
ensuring that the City complied with all state and local financial
rules and regulations, and preparing the City's budget.  (Pacurar
Dec. ¶ 5; East Chicago Municipal Code, Ch. 2.08.)  Another member
of the transition team was James Bennett, who later became the
City's financial consultant when Pabey took office.  (Bennett Dec.
¶ 3.)  In late 2004, Mayor Pabey and Pacurar asked Bennett to
assess the financial condition of the City and prepare a financial
plan.  (Bennett Dec. ¶ 6.)  Bennett gathered information,
participated in meetings, and determined "that the 2005 City budget
the Pabey administration inherited could not be supported with the
anticipated tax dollars and miscellaneous revenue sources" and
recommended that the Pabey administration reduce the number of City
personnel.  (Bennett Dep. at 42-43; Bennett Dec. ¶¶ 9, 23; Pabey
Dep. at 75-76; Pacurar Dep. at 48-49, 51.)  Mayor Pabey directed

Pacurar to "[m]ake sure there is no politics being played in this. Just cut what you have to cut." (Pabey Dep. at 90-91; Pacurar Dec. ¶ 10.)

After a number of new department heads were appointed, Pacurar instructed the department heads to provide him with a list of positions by job title (not employee names) that each department head believed was not necessary for the successful operation of the department. (Pacurar Dep. at 63-65; Pacurar Dec. ¶ 13.) After he received the lists of positions, if more than one person held that position, Pacurar generally looked to payroll records or job function or performance to determine who to let go. (Pacurar Dep. at 65-67; Pacurar Dec. ¶ 14.) After Pacurar asked Corsbie for a list of union employees that could be laid off to reduce the budget,[1] in approximately April 2005, Pacurar again asked Corsbie to examine the personnel situation in her department and determine where positions could be cut without compromising services. (Corsbie Dep. at 31-33; Pacurar Dec. ¶ 28.) Corsbie testified that there was no suggestion that if someone was a supporter of former Mayor Pastrick that that should be taken into account. (Corsbie Dep. at 35.) Corsbie met with Pacurar and told him about approximately 5-7 positions (not names) that could probably be

---

[1] Approximately 56 union positions were eliminated between January and April 2005, in various departments. Approximately 10 non-union employees were terminated in January 2005. Then, a total of approximately 31 union members and approximately 37 non-union employees were laid off effective April 22, 2005.

eliminated. (Corsbie Dep. at 32-33.) According to Corsbie, "in
her mind" she thought the names that coordinated with the positions
on the list to terminate were Constance Dedelow and Traceen Warner.
(Corsbie Dep. at 33.) Only much later, close to the time of
Pacurar's deposition on December 14, 2006, did Corsbie tell Pacurar
that she would have liked to retain Duwar. (Pacurar Dep. at 101-
02.) According to Pacurar, Corsbie told him that two of the
support staff positions could be eliminated, but she did not
recommend anyone in particular. (Pacurar Dec. ¶ 30.) So, Pacurar
reviewed payroll records which included the salaries. The payroll
report showed that Duwar and Dedelow (both administrative
assistants) earned $44,715 each, while Martinez (secretary) earned
$28,966, Warner (secretary) earned $27,129, and Guillen
(receptionist, who was listed on the payroll records as a
secretary) earned $25,329. (Pacurar Dec. ¶ 32; Corsbie Dep. at 39-
41.) Pacurar testified that "[b]ecause the two Administrative
Assistants put together earned more than the three secretaries
combined, it made sense to me to eliminate the Administrative
Assistant positions, as that would amount to the largest possible
budgetary reduction." (Pacurar Dec. ¶ 34.) Therefore, he fired
both administrative positions, laying off Duwar and Dedelow.
(Pacurar Dec. ¶ 35.)

Duwar was called into Corsbie's office on April 21, 2005, and
told that Corsbie had received a list from City Hall indicating

that Duwar was to be terminated.  (Duwar Dep. at 22-23.)  Duwar was

told that the termination "came from City Hall."  (Duwar Dep. at

20.)  However, Pacurar testified that he made the decision to fire

Duwar:

> Q.    Did he (Mayor Pabey) at any time, say, discuss
> with you perhaps, and by any time, I mean
> during all of '05 when this is going on, the
> personnel reductions were going on, people who
> ought to be kept and people who ought not to
> be kept?
>
> A.    No.
>
> Q.    So what you're telling me is George Pabey and
> you never discussed who should be fired and
> who should not be fired in 2005; is that a
> correct statement?
>
> A.    That's right.
>
> Q.    But the final decision to let someone go was
> made by you; is that your testimony?
>
> A.    Yes.

(Pacurar Dep. at 54.)  Pacurar testified that he did not receive

any guidelines or direction from Mayor Pabey in making decisions to

reduce the workforce, but was only told that the payroll needed to

be reduced.  (Pacurar Dep. at 53.)  Although Duwar believes she was

fired because of her political affiliation with Pastrick, she

admits that she never heard from anyone that she was fired for her

alignment with Pastrick.  (Duwar Dep. at 20, 61.)  Duwar had

discussed with Corsbie that she was politically aligned with Mayor

Pastrick; however, Corsbie also shared that she had supported the

former Mayor Pastrick as well.  (Duwar Dep. at 20-21.)

8

Duwar, who is Caucasian, believes that her race played a part in being terminated.  In particular, she believes that white and African American employees were terminated so they could be replaced with Hispanic employees.  (Duwar Dep. at 25.)  In Duwar's office, Traceen Warner, the only African American employee in the Solid Waste Division office, was retained.  (Corsbie Dep. at 42-43.)  The other two secretaries who were retained were Martinez, who is Hispanic, of Mexican ancestry, and Guillen, who is Hispanic, and of Mexican ancestry.  (Duwar Dep. at 79.)  While some union employees were called back after being laid off, and an employee from another department was transferred into Corsbie's department, her support staff was not increased after the 2005 reduction.  (Corsbie Dep. at 52-59.)

Both Lenore Duwar and her husband, Ed Duwar, attended Pastrick's public campaign functions in 2003 and 2004, contributed money to the campaign, and did volunteer work in support of Mayor Pastrick.  (Duwar Dep. at 14-15.)  Lenore Duwar also worked at campaign headquarters and erected signs and posters, and attended parades in support of Pastrick.  (Duwar Dep. at 15.)  Lenore's husband, Ed Duwar, was fired on December 30, 2004, two days after Pabey took office on December 28, 2004.  *See Duwar v. City of East Chicago*, No. 2:05-cv-00391, 2007 WL 627563 (N.D. Ind. Feb. 23, 2007).

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v.*

10

*Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Summary Judgment is Warranted on Plaintiff's First Amendment Claim Because Plaintiff Has Failed To Establish Her Prima <u>Facie Case of Political Motivation</u>

Generally, "public employees may not be made to suffer adverse

job actions because of their political beliefs." *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004) (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 79 (1990); *Elrod v. Burns*, 427 U.S. 347 (1976)).  It is therefore "well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment," with certain exceptions for employees in policymaking or confidential positions. *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004).  Here, there is no contention that Duwar is a policymaker or is in a confidential position.  Thus, the Court may move on to whether the prima facie case has been satisfied.

In order to establish a prima facie case of politically motivated discharge, Duwar must prove by a preponderance of the evidence: first, that her conduct was constitutionally protected; and second, that the protected conduct "was a substantial or motivating factor in the employment decision." *Hall*, 389 F.3d at 762 (citing *Simmons v. Chicago Bd. Of Educ.*, 289 F.3d 488, 495 (7th Cir. 2002); *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998); *see also Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992).  The Seventh Circuit has noted that "[t]hat burden is not insignificant. A disgruntled employee fired for legitimate reasons would not be able to satisfy [her] burden merely by showing that [she] carried the political card of the opposition party or that [she] favored the defendant's opponent in the election." *Nekolny*, 653 F.2d at

12

1168.  In other words, "[i]t is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers . . . ." *Hall*, 389 F.3d at 762.  If Duwar is able to show that her political affiliation was a motivating factor in her termination, the burden then shifts to Defendants to prove by a preponderance of the evidence that they had a legitimate, non-political reason for terminating her in order to avoid liability. *Garrett*, 961 F.2d at 632.

For Duwar to prove that her political activities were a substantial or motivating factor in Defendants' decision to terminate her, she "must first prove that [Defendants] in fact knew of them."  *Garrett*, 961 F.2d at 632 (citing *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079 (7th Cir. 1992)); *see also Nelms*, 153 F.3d at 819; *Hall*, 389 F.3d at 762 (noting that "the threshold question" in analyzing whether an employment decision was motivated by plaintiff's political activities "is whether the defendants even knew about" those activities).  Defendants concede that "Duwar's conduct is constitutionally protected."  (Mem. Of Law in Supp. Of Defs.' Mot. For Summ. J., p. 12.)  Additionally, Defendants do not challenge that Duwar was an active supporter of Pastrick, and that both Pabey and Pacurar knew that Duwar supported Pastrick.  Even assuming both Pabey and Pacurar were aware of Duwar's political affiliation, the mere awareness of Duwar's support of Pastrick is insufficient by itself to show that it was this knowledge that

motivated Duwar's termination. *See Allen v. Elgin*, No. 2:04-cv-001 PS, 2006 WL 3314557, at *8 (N.D. Ind. Nov. 9, 2006).

The next question is whether Duwar has demonstrated by a preponderance of the evidence that Defendants were "motivated, at least in part, by that conduct to fire [her]." *Garrett*, 961 F.2d at 633. In *Nekolny*, the Seventh Circuit held that plaintiffs had met their burden of demonstrating that their termination was politically motivated where the defendant's assistant specifically informed them that they were losing their jobs because they had worked against the defendant in the election. 653 F.2d at 1168-69. There is no such direct evidence present in this case - Duwar has pointed no such statements that Pabey terminated her for her alignment with Pastrick. Thus, Plaintiff relies upon circumstantial evidence.

Duwar cites *Felton v. Board of Commissioners of the County of Greene*, 5 F.3d 198, 201-02 (7th Cir. 1993), for the proposition that the Court must review a variety of factors in order to determine whether political motivation has been shown, including proximity of the adverse result of the election at issue, the past practice in the jurisdiction as to whether employment was based on political affiliation, the absence of consultation with counsel, the absence of evidence of unsatisfactory performance, and whether the plaintiff had experience or qualifications equal to those who were advantaged. (Pl.'s Mem. In Opp. To Mot. For Summ. J., p. 6.)

However, *Felton* does not hold that these factors *must* be considered. The Seventh Circuit accurately recaps its own holding in *Felton* as follows:

> In *Felton v. Bd. of Comm'rs of Greene County*, 5 F.3d 198 (7th Cir. 1993), we found that the Board of Commissioners unlawfully considered political affiliation and thus was liable in its official capacity where the evidence revealed that the decision makers engaged in a long-standing practice of relying on political affiliation in staffing the position at issue and that the Democratic decision makers decided to fill the position with a Democrat and advised the Democrat of this decision significantly before a formal vote of the board occurred.

*Nelms*, 153 F.3d at 820. In response to the defendant's argument that in its original findings of fact, conclusions of law and decision, the magistrate judge made no specific findings regarding unlawful motive on the part of a specific Commissioner, the Seventh Circuit reviewed certain findings (including the timing of the decision and job performance), and found that the district court's finding that the specific Commissioner (and not just the Board as a whole) unlawfully considered political affiliation was properly supported by specific findings. *Felton*, 5 F.3d at 202. This procedural posture is not present in this case. More importantly, *Felton* is distinguishable because here, Defendants have presented no evidence of a long-standing practice of staffing according to political affiliation. Although Duwar argues that only Pastrick supporters were terminated, Defendants have put forth evidence that Mayor Pabey retained many of the department heads who were

15

appointed by former Mayor Pastrick. (Statement of Material Facts as
to Which There is no Genuine Issue, ¶¶ 45, 47.)  Additionally,
unlike the plaintiff in *Felton*, Duwar has not shown that she was
terminated in order to be replaced with a political ally of the
Pabey administration.  In this case, no one was hired to replace
Duwar, and no new administrative support staff was hired in the
Solid Waste Division of the Sanitary District.

Duwar argues that Defendants' decision must have been
motivated by a political reason because other employees with less
experience, who were not Pastrick supporters, were retained, and
sets forth in the facts that Duwar always received positive
evaluations of her work. (Pl.'s Mem. In Opp. To Mot. For Summ. J.,
p. 7; Pl.'s App. Of Material Facts Creating Genuine Issues in Opp.
To Defs.' Mot. For Summ. J., ¶ 34.)  However, as the Seventh
Circuit found in *Garrett*:

> Facts suggesting that a qualified person of one
> type was fired, and a person of another type was
> hired make out a prima facie case of race or sex
> discrimination, but they do not suffice to show
> discrimination based on political association. . .
> . [Plaintiff's] contention that he was performing
> his job satisfactorily, even if true, does not
> prove that the motive for his firing was political.

*Garrett*, 961 F.2d at 633.  Similarly, even assuming Duwar was
performing her job satisfactorily, and that she had more experience
than the three secretaries retained, this does nothing to show that
Defendants' motive for her firing was political.  Duwar "could be
fired for a good reason or for no reason at all, as long as [she]

was not fired because of [her] constitutionally protected activities." *Id.* (citing *Perry v. Sinderman*, 408 U.S. 593 (1972); *Elrod v. Burns*, 427 U.S. 347, 361 (1976); *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 283 (1977)); *see also Garrett*, 961 F.2d at 634 ("[a] reorganization is a legitimate reason to terminate someone who is performing satisfactorily.").

Duwar attempts to convolute Pacurar's decision to let her go, stressing the fact that he did not inquire into which administrative assistant Corsbie wanted to keep, and arguing the trier of fact could infer that because both administrative assistants were white, and both supported Pastrick, they should be fired in favor of retaining the Hispanic secretaries. (Pl.'s Mem. In Opp. To Mot. For Summ. J., p. 3.)  This theory is nothing more than speculation.  Pacurar clearly testified that Corsbie provided him with the titles of approximately five to seven positions that could be eliminated in order to reduce the budget, and that Corsbie told him two of the administrative support staff positions could be eliminated (but did not tell Pacurar names). (Corsbie Dep. at 32-33; Pacurar Dec. ¶ 30.)  To determine which two of Corsbie's support staff positions to eliminate, Pacurar reviewed payroll reports, and because the three secretaries earned $81,424 combined, compared to Duwar's and Dedelow's combined earning of $89,424, Pacurar decided to lay off both Duwar and Dedelow as a cost-cutting measure.  (Pacurar Dep. at 101; Pacurar Dec. ¶ 34.)  There is

nothing sinister about the fact that, in determining who to fire,
Pacurar learned the names of Duwar and Dedelow.  Moreover, it is
undisputed that at the time of Duwar's termination, Pacurar did not
know that Corsbie wanted to retain Duwar, thus he did not overrule
her recommendation.  Nothing about the method Pacurar used to fire
Duwar suggests that it was motivated by politics.  Rather, it was
implemented to reduce the budget.

The parties dispute whether Pabey was the ultimate
decisionmaker, who was involved in firing Duwar.  Although Pacurar
testified that he alone made the decision to fire Duwar (Pacurar
Dep. at 54), because Duwar was told that the decision to terminate
her "came from City Hall" (Duwar Dep. at 20), it is possible that
the fact finder could determine that Pabey was the decisionmaker.
No material issue of fact is present, however, because regardless
of whether Pabey made the decision to fire Duwar or Pacurar made
the decision, there is no evidence that the decision to fire Duwar
was motivated, at least in part, by Duwar's support of Pastrick.

In sum, there is no evidence of causation.  Defendants have
not established that Duwar's political activities were a
substantial or motivating factor in Defendants' decision to
terminate her.  Duwar has produced no evidence from which a
rational jury could conclude that her political activities were a
substantial or motivating factor in Duwar's termination.  *See*
*Sybron Transition Corp. v. Security Ins. Co. Of Hartford*, 107 F.3d

18

1250, 1254 (7th Cir. 1997) ("[a] party must present more than mere speculation or conjecture to defeat a summary judgment motion"); *Garrett*, 961 F.2d at 634 ("speculation cannot be the basis of a jury verdict"). As such, Duwar has failed to carry her burden of establishing a prima facie case of politically motivated discharge.

Plaintiff urges that the City's articulated reason for firing Duwar (cost-cutting) is pretextual, and concocted after the fact. Specifically, Plaintiff has provided the Court with a declaration from Timothy W. Raykovich, M.D., Mayor Pastrick's former consultant since 1999, who attests that at the beginning of the Pabey Administration, the City actually had a positive cash balance, that Bennett grossly misstated the Pastrick administration's level of spending, and that the Pabey administration actually increased city spending. (Raykovich Dec. ¶¶ 3, 81-85, 86-90.) But because Duwar has not established a prima facie case of politically motivated discharge, this Court need not reach the issue of whether the City has proved by a preponderance of evidence that it had a legitimate, non-political reason to fire Duwar. *See Garrett* (finding the defendant "does not have to prove a legitimate reason for firing [plaintiff] until [plaintiff] has come forth with sufficient evidence to support a prima facie case of political motivation."). 961 F.2d at 633. To the extent the motion to strike requests that other allegedly improper averment's in Duwar's appendix of material facts (separate from Dr. Raykovich's declaration) be stricken, the

19

Court notes that even if these statements were considered by the Court, summary judgment is still warranted.  Thus, Defendants' Motion to Strike Certain Matter Asserted as Fact by Plaintiff in Opposition to Defendants' Motion for Summary Judgment is **DENIED AS MOOT.**

> Defendants are Entitled to Summary Judgment on Plaintiff's Section 1981 Claim Because Plaintiff Has Failed to Satisfy Her <u>Prima Facie Case of Reverse Race Discrimination</u>

Duwar also alleges reverse discrimination, claiming she was terminated in violation of 42 U.S.C. section 1981 and section 1983 because she is Caucasian.  Under section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  An employee can show incidents of illegal discrimination through direct proof, or in the absence of direct proof, an employee may make a case with sufficient indirect proof, and upon doing so, switch the burden of proof to the employer.  In this case, there is no direct proof of discrimination and Duwar proceeds with indirect proof.

Under the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), Duwar must first establish a prima facie case of race discrimination by proving by a preponderance of evidence that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily;

(3) the employer took an adverse employment action against her; and (4) the employer treated at least one similarly situated employee outside of her protected class more favorably.  *See Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004). Recently, the Seventh Circuit modified the test to apply to situations where members of majority groups believe they were subject to employment discrimination. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 457 (1999).   The Seventh Circuit has recognized that in cases of "reverse discrimination," the first prong of the *McDonnell Douglas* test cannot be used.  *Id.*  Instead, a plaintiff must show:

> "[B]ackground circumstances" that demonstrate that a particular employer has "reason or inclination to discriminate invidiously against whites" or evidence that "there is something 'fishing' about the facts at hand."

*Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003) (*quoting Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993)).

First, Duwar has failed to establish the first prong of the prima facie test, that Defendants had reason or inclination to discriminate invidiously against whites, or evidence that shows something fishy was occurring.   Defendants argue that Duwar has failed to satisfy this first modified element of a prima facie case because she was terminated by the City's Controller, Charles Pacurar, who is also Caucasian.  *See, e.g., Phelan*, 347 F.3d at 684-85 (holding where decision maker was white male, plaintiff

failed to establish the modified first element). However, as noted before, because Duwar's termination "came from City Hall," it is possible, as urged by Plaintiff, that the fact finder could determine that Pabey was the actual decisionmaker. Nevertheless, Duwar has not provided any evidence that Pacurar or Pabey discriminated invidiously against whites, or that something fishy was occurring with the administration. Although Duwar argues that "Pacurar changed the rules of the game, by ignoring the department head's wishes to keep Duwar," (Pl.'s Mem. In Opp. To Mot. For Summ. J., p. 11), there is no evidence whatsoever in the record that Pacurar knew at the time of the termination that Corsbie actually wanted to retain Duwar.   Corsbie only told Pacurar that two administrative positions could be let go, she did not specify names.   Further, in light of the Pabey administration's goal to limit expenses, it does not seem suspicious that Duwar's length of service or performance were not considered.

Duwar has also failed to establish the fourth element of the prima facie case, that she was treated less favorably than similarly situated employees. Incredibly, Duwar argues that "[t]he Hispanic secretaries who were reassigned Duwar's job, and worked in the same place for the same department head must be deemed to be similarly situated." (Pl.'s Mem. In Opp. To Mot. For Summ. J., p. 11.)   Plaintiff is mistaken.   In order to meet her burden of showing that another employee is "similarly situated," Duwar "must

show that there is someone who is directly comparable to her in all respects." *Patterson v. Avery Dennison Corp.*, 281 f.3d 676, 680 (7th Cir. 2002) (citations omitted).  While it is true that the three Hispanic secretaries worked in the same department as Duwar and had the same boss, the main distinguishing factor about them is they earned significantly less money than Duwar.  It is undisputed that Duwar and Dedelow were administrative assistants earning $44,715 each, while the three secretaries earned $28,966, $27,129, and $25,329 each (and this last individual was technically the receptionist, although she was recorded as a secretary on the payroll).  This discrepancy in salary alone keeps the secretaries from being "similarly situated" to Duwar, especially in light of the articulated reason for firing Duwar – cost cutting. Additionally, Plaintiff has put forth no evidence that the three Hispanic secretaries performed substantially similar duties to Duwar, an administrative assistant.

Duwar has failed to prove her prima facie burden of race discrimination.  Because summary judgment is warranted on this basis, the Court declines to analyze whether Defendants had a legitimate, non-discriminatory reason for Duwar's termination.


CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED** and the Motion to Strike is **DENIED AS**

**MOOT**.  The Clerk is **ORDERED to DISMISS WITH PREJUDICE** Plaintiff's complaint and to **CLOSE** this case.


**DATED: July 17, 2007**                    **/s/ RUDY LOZANO, Judge**
                                            **United States District Court**